UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONA PRICE,

      Plaintiff,

v.

SOUTHWESTERN INVESTORS
GROUP, LLC,

      Defendant.

_____/

## COMPLAINT

**I.**    **Introduction**

1.    This is an action for damages brought against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

2.    Defendant, along with other entities and individuals to be identified in discovery, are involved in a fraudulent and ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay payday loans.  This scheme, operated by defendants as well as many other entities located in and around Buffalo, New York, Atlanta, Georgia and Charlotte, North Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes variations of the following:  The caller calls from a blocked number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to

1

the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm). Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response. When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt. Of course, no lawsuit has been filed. Often times the debt is time-barred. Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account. Often times, the loan has been repaid and there is no debt owed. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3. The use of these unlawful debt collection practices is epidemic. See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants. See also the complaint filed by the United States of America

against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

5.      Recently, the federal government has begun to criminally indict individuals involved in variations of the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and

Aggravated Identity Theft.

## II.  Jurisdiction

6.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

## III.  Parties

7.     Plaintiff Mona Price is an adult, natural person residing in Kent County, Michigan.  Ms. Price is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Price is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8.     Defendant Southwestern Investors Group, LLC ("SIG") is an active New York limited liability company, purportedly doing business at 3368 Nash Road, Hamburg, New York 14075-2511. The registered agent for SIG is National Registered Agents Inc, 111 Eighth Avenue, New York, New York 10011. According to documents filed by SIG with various governmental entities, the members and officers of SIG include Mark C. Lesinski. SIG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. SIG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. SIG is a "debt collector" as the term is defined and used in the FDCPA. SIG is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, SIG is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.     SIG directly and indirectly participated in the unlawful debt collection practices

4

to collect an alleged debt from Ms. Price as described in this complaint.

10.      SIG maintains an internet website  (www.southwesterninvestorgroup.com) which states that SIG is in the business of purchasing and servicing delinquent consumer debt. The SIG website also states SIG accepts payments of consumer debts through its "agency network." The SIG website also states: "SIG goes to great lengths to protect its partners' reputations through information security, regular training, quality control and auditing of agency work. There is zero tolerance for operating 'in the grey' either within the company or at any of the agencies in our network."

11.      On October 30, 2015, SIG filed a lawsuit in the Supreme Court for the County of Erie of the State of New York, Index Number 812699/2015, stating in Paragraph 3 of the Complaint: "The business of SIG includes the purchasing of consumer debt portfolios and providing collection services in connection with consumer debt purchased by SIG or in connection with debt outsourced to SIG by third party clients."

12.      SIG regularly finances its purchase of delinquent consumer debt portfolios. Between February 19, 2015 and the present, at least twenty-six UCC Financing Statements have been filed with the State of New York, naming SIG as the debtor, either CMAX Finance Partners III LLC or Pharus Funding, LLC as the secured party, and delinquent consumer accounts and the proceeds therefrom as the collateral.

13.      An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000).

14.      A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the

corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

15.    Plaintiff Mona Price had a Victoria's Secret Angel credit card, issued through Comenity Bank, which she used to purchase goods or services for personal, family and household purposes.  Any resulting obligation of Ms. Price to repay money to Comenity Bank was a "debt" as the term is defined and used in the FDCPA, MRCPA and MCPA.

16.    Ms. Price allegedly failed to repay her debt to Comenity Bank and the account allegedly became delinquent.

17.    Comenity Bank charged off and sold the account.

18.    On or about May 15, 2015, defendant Southwestern Investors Group, LLC purchased the account.

19.    On or before April 1, 2016, SIG placed the account for collection with an entity named ASG Solutions LLC ("ASG"), an active New York limited liability company formed March 14, 2013. ASG also does business under the unregistered name of Allen, Scott & Gregory.

6

ASG is owned, managed and operated by Gassan Ali Rizek. ASG does business operating a debt collection call center at 4244 Ridge Lea Road, Suite 46, Amherst, New York 14226. ASG receives mail at P.O. Box 36, Niagara Falls, New York 14304. ASG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ASG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ASG is a "debt collector" as the term is defined and used in the FDCPA. ASG is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, ASG is a "collection agency" and "licensee" as the terms are defined and used in MOC.

20.     ASG directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Price as described in this complaint.

21.     ASG maintains an internet website (www.asgsolutionsllc.com) which relates to an internet domain name registered on April 11, 2013 through GoDaddy.com, LLC by defendant Gassan Ali Rizek, 4233 Ridge Lea Road, Suite 46, Amherst, New York 14226, with telephone numbers 855-223-9251 and 855-448-7700 (fax). When Mr. Rizek registered the internet domain name he provided his email address of gassanr@urssolutionsllc.com. The ASG internet website provides a mailing address of P.O. Box 36, Niagara Falls, New York 14304. The ASG internet website states in pertinent part: "Honest. Integrity. Justice. ASG Solutions is a full service accounts receivable management firm servicing clients throughout the country. . . . Whether its delinquent accounts or bad checks, our goal is to apply a sincere resolution to your collection need. We put the T in trust."

22.     ASG and its employees, agents and affiliates have used multiple telephone numbers to conduct their unlawful debt collection scam, including 844-812-2405, 844-518-0394, 855-223-9251, 855-448-7700 (fax), 855-989-1040, 866-314-8870 and 866-869-4010.

23.     The Better Business Bureau for the Buffalo, New York region has posted an alert on its internet website, warning consumers about ASG and its unlawful debt collection practices.

24.     Mr. Rizek also owns and operates a debt collection entity named URS Solutions LLC ("URS"), which is an active New York limited liability company formed March 20, 2012. Mr. Rizek operates URS from the same office space as ASG, at 4244 Ridge Lea Road, Suite 46, Amherst, New York 14226. URS receives mail at P.O. Box 36, Niagara Falls, New York 14304, which is the same post office box used by ASG. URS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. URS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. URS is a "debt collector" as the term is defined and used in the FDCPA. URS is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, URS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

25.     The Better Business Bureau for the Buffalo, New York region has posted an alert on its internet website, warning consumers about URS and its unlawful debt collection practices. In 2016, URS reported to the BBB that as of February 12, 2016, URS ceased being a debt collector and became a "consulting firm," but would continue to collect debts from any consumer with a prior arrangement to pay off their outstanding debt.  Stated differently, URS continues to operate as a debt collector and any statements to the contrary by URS are mere wordplay. The BBB internet website lists an URS email address of sales@urssolutionsllc.com. Moreover, the internet database maintained by the Consumer Financial Protection Bureau contains multiple consumer complaints that URS and its employees in their efforts to collect

debts make false threats of litigation and falsely claim to be attorneys.

26. Gassan Ali Rizek, age 41, is a natural person, possibly residing at 1632 Michigan Avenue, Niagara Falls, New York 14305-2908. Mr. Rizek frequently uses an address of 5919 Niagara Falls Boulevard, Niagara Falls, New York 14304-1535. However, that address is is an Econo Lodge motel, apparently owned by Mr. Rizek's parents. Mr. Rizek is an owner, managing member, manager, employee and agent of defendants ASG and URS. Mr. Rizek uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Rizek regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Rizek is a "debt collector" as the term is defined and used in the FDCPA. Mr. Rizek is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Rizek is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

27. Mr. Rizek (a) created the collection policies and procedures used by ASG and URS and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of ASG and URS, (c) oversaw the application of the collection policies and procedures used by ASG and URS and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by ASG and URS and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Price as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by ASG and URS and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in,

and ratified the unlawful debt collection practices used by ASG and its employees and agents in their attempts to collect an alleged debt from Ms. Price as alleged in this complaint.

28.    Mr. Rizek directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Price as described in this complaint.

29.    SIG placed the account for collection with ASG and Mr. Rizek so that ASG and Mr. Rizek could collect money from Ms. Price for the benefit of SIG.

30.    ASG and Mr. Rizek, in their efforts to collect money from Ms. Price, acted as agents of SIG.

31.    When SIG placed the account for collection with ASG and Mr. Rizek, SIG and Mr. Lesinski knew, or should have known, that ASG and Mr. Rizek had a history of using the unlawful debt collection practices that are described in this complaint.

32.    When SIG placed the account for collection with ASG and Mr. Rizek, SIG and Mr. Lesinski knew, or should have known, that the Better Business Bureau for the Buffalo, New York region had posted alerts on its internet website, warning consumers about ASG, URS and Mr. Rizek and their debt collection practices.

33.    On or about April 1, 2016, ASG and its employee and agent made a call to a cellular telephone belonging to Ms. Price and left the following scripted message on voice mail: "This message is for Mona Price. My name is Alicia Scott, calling in regards to a legal notice that is attached to both your name and your Social Security Number, so I do need an immediate call back from you or your representative. The office number is 866-314-8870 and you will need to reference File Number 150557."

34.    On and after April 1, 2016, Ms. Price made multiple calls to telephone number

866-314-8870, but each time the call was answered with the following pre-recorded greeting: "You've reached the Claims Department. All of our associates are unavailable. Please leave you claim and/or case number, along with your phone number and your name, and someone will get back to you as soon as possible. Thank you."

35.     On or about April 12, 2016, a call was placed to telephone number 866-314-8870 and was answered by an ASG employee and agent with the words "David in Settlements." In the ensuing conversation, the ASG employee and agent made the following statements regarding Ms. Price and the account:

a)      We have a Legal Notice scheduled for delivery and we just need her to validate her home residence for the record so we can release it to her.

b)      All phone calls are recorded per Michigan state law.

c)      There was actually a default forwarded in my office earlier this morning in regard to a breach of a legally binding contract that your wife signed on behalf of my client, Victoria's Secret, and I've been hired to recommend whether or not your wife is to be sued on this matter. Before I make a decision I just want to know why she defaulted on the payment. She only owes $302.70. But once she gets sued on this matter she will be hit for about $1,400.00 because they would do a civil judgment, attach any wages, with late fees, property, bank accounts, we just want her to pay back what she owes. That's what I'm calling, calling to make my recommendation, so we can put a cease and desist on the lawsuit. We just want back what she owes Victoria's Secret. The $302.70.

11

d)      She has to pay us because Victoria's Secret retained our services. We're a collections, ASG Solutions, LLC. They sent her to collection so that we can go with a suit against her.

e)      If you pay us $302.70 right now, I can put a cease and desist on the lawsuit in Kent County, so the County Clerk will not be notified, her employer won't be notified with a wage garnishment form, which is the most important thing, because that's kind of embarrassing, and like I said, she doesn't have to take off a half day of work and appear in court in Kent County.

f)      If you will put $100.00 down, I will put a cease and desist on the lawsuit.

g)      We are ASG Solutions, LLC. We're the collection agency that was retained by Victoria's Secret to collect if for them.

h)      Your credit card payment will show up on your monthly bank statement as URS Solutions.

36.    The above-described threats and representations made by ASG and its employees and agents, in their capacity as agent for SIG, were false and part of a scripted and unlawful debt collection practice that is being perpetrated by ASG, Mr. Rizek and their employees and agents, to coerce the payment of money from consumers across the country through the use of false threats, intimidation, extortion, and unlawful harassment.  Discovery is expected to disclose that ASG, Mr. Rizek and their employees and agents, while collecting accounts owned by SIG and placed with them by SIG for collection, have coerced the payment of thousands of dollars from thousands of consumers using the same unlawful tactics that are described in this complaint.

37.     ASG and its employees and agents failed to meaningfully identify themselves and their companies when leaving messages for Ms. Price.

38.     ASG and its employees and agents falsely represented and falsely implied that there were legal claims pending against Ms. Price.

39.     ASG and its employees and agents falsely represented and falsely implied that a lawsuit had been filed or would be filed against Ms. Price to collect the alleged debt.

40.     ASG and its employees and agents falsely represented and falsely implied that Ms. Price was going to be served with a lawsuit.

41.     ASG and its employees and agents falsely represented and falsely implied that Ms. Price would have a judgment entered against her for $1,400.00.

42.     ASG and its employees and agents falsely represented and falsely implied that Ms. Price had been or would be sued in Kent County, Michigan.

43.     ASG and its employees and agents falsely represented the amount of the alleged debt.

44.     ASG and its employees and agents falsely represented and falsely implied that Victoria's Secret owned the account.

45.     ASG and its employees and agents falsely represented and falsely implied that Victoria's Secret had hired ASG to collect the account.

46.     ASG and its employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect money from Ms. Price.

47.     Neither SIG nor ASG intended to file a lawsuit against Ms. Price in any Michigan court in efforts to collect the alleged debt.

48.     Neither SIG nor ASG has ever filed any lawsuit in any Michigan court to collect any debt from any person.

49.     ASG and its employees and agents falsely represented and falsely implied that Ms. Price would be sued and then her wages would be garnished and her property and bank accounts would be attached and seized.

50.     ASG and its employees and agents falsely represented and falsely implied that the County Clerk for Kent County would somehow be notified of a claim against Ms. Price.

51.     ASG and its employees and agents falsely represented and falsely implied that a wage garnishment form would be sent to Ms. Price's employer and would cause Ms. Price to be embarrassed and humiliated.

52.     ASG and its employees and agents falsely represented and falsely implied that Ms. Price would have to take off a half day of work and appear in court in Kent County unless she paid money to ASG.

53.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

54.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

55.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

56.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with

14

the United States or any State.  15 U.S.C. § 1692e(1).

57.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

58.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

59.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

60.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

61.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

62.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

63.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. §

1692e(10).

64.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

65.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

66.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

67.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

68.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

69.     Defendant through its agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

70.     Defendant and its agents failed to timely send to Ms. Price a notice containing the information required by 15 U.S.C. § 1692g(a).

71.     Defendant had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

72.     Defendant through its agents have intentionally and wilfully violated the FDCPA,

16

MRCPA and MOC.

73.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

74.     Defendant through its agents, to increase their respective business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

75.     As an actual and proximate result of the acts and omissions of defendant and its agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

**V.      Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

76.     Plaintiff incorporates the foregoing paragraphs by reference.

77.     Defendant through its agents has violated the FDCPA.  Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)     Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)     Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)     Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)     Such further relief as the court deems just and proper.

### Count 2 – Michigan Regulation of Collection Practices Act

**7**8.     Plaintiff incorporates the foregoing paragraphs by reference.

79.     Defendant through its agents has violated the MRCPA. Defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)     Defendant violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)     Defendant violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)     Defendant violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)     Defendant violated M.C.L. § 445.252(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)   Defendant violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)   Defendant violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)   Defendant violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to M.C.L. § 445.257(2);

b)   Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)   Statutory damages pursuant to M.C.L. § 445.257(2);

d)   Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)   Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

80.   Plaintiff incorporates the foregoing paragraphs by reference.

81.   Defendant through its agents has violated the MOC.  Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)   Defendant violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

19

b)      Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendant violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendant violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)      Defendant violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: April 14, 2016

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com